# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-3996 |
| | § | |
| CRAIG A. WASHINGTON, SR., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the court are plaintiff United States of America's ("USA") motion for summary judgment (Dkt. 20) and defendants Craig A. Washington, Sr. ("Washington") and Washington Children's Trust No. 1's (the "Trust") (collectively, "Defendants") motion for summary judgment (Dkt. 31). After reviewing the motions, related filings, and applicable law, the court is of the opinion that Defendants' motion should be **GRANTED IN PART AND DENIED IN PART** and that the USA's motion should be **DENIED**.

## I. BACKGROUND

This is an action to collect allegedly delinquent taxes by foreclosure upon real property. The USA seeks a judgment setting aside a conveyance of certain real property to Washington Children's Trust No. 1 so that it may foreclose upon the property in order to satisfy a tax lien relating to unpaid federal taxes by Washington. Dkt. 1. The USA brought its complaint against Washington individually and in his capacity as the trustee of the Trust, as well as various other defendants who it asserts may claim an interest in the real property at issue. Dkt. 1.

The properties at issue are located at 2317 Caroline Street, Houston, Texas, 2323 Carolyn Street, Houston, Texas, and 1313 McIlhenny, Houston, Texas. Dkt. 20-2. Washington purchased the property located at 2317 Caroline Street, Houston, Texas on September 8, 1976. Dkt. 20-2. He

purchased the property located at 2323 Caroline Street, Houston, Texas and the property located at 1313 McIlhenny, Houston, Texas on August 16, 1976.[1]  *Id.*

In 1989 and 1990, according to Washington, he created twelve irrevocable trusts for the benefit of his children: the Washington Children's Trust Numbers 1 through 10, the Washington Children's Trust Fund, and Washington Children's Family Trust.  Dkt. 31.  The trust at issue in this case is the Washington Children's Trust No. 1, and Washington is the trustee of that Trust.  *Id.* Washington claims that he created the trusts from a form book but that he no longer has copies of the trusts because they were destroyed when the warehouse in which they were stored was flooded during a tropical depression in 2001.  Dkt. 25-1.  He contends that both the paper and any electronic versions of the documents were destroyed, and he submits an affidavit in which he provides the alleged terms of the original documents.  Dkt. 27, Exh. 6.

On January 11, 1991, Washington filed for bankruptcy.  *Id.*  His wife, Dorothy M.L. Washington, also filed for bankruptcy in 1991.  Dkt. 31.  Dorothy M.L. Washington's bankruptcy was discharged in 1992.  *Id.*  Washington did not receive a discharge in his bankruptcy, and the case was dismissed on February 28, 2000.  *Id.*  In the meantime, Washington and Dorothy M.L. Washington got divorced.  *Id.*  On March 10, 1993, pursuant to a property settlement agreement reached in their divorce, Washington conveyed the two Caroline Street properties and the property located at 1313 McIlhenny to Dorothy M.L. Washington.  *Id.*  She, in turn, conveyed a property located at 3001 N. Calumet Drive, Houston, Texas, to Washington.  *Id.*

---

[1]  The property located at 2323 Caroline is currently an office building.  *Id.*  Washington conducts his law practice out of that office building.  *Id.*  The properties located at 2317 Caroline and 1313 McIlhenny are parking lots for the office building located at 2323 Caroline.  *Id.*

2

On November 29, 1999, the USA recorded a Notice of Federal Tax Lien in the real and personal property records of Harris County, Texas, against Washington for the 1988, 1989, and 1990 tax years. *Id.* On November 6, 2000, the USA filed a Notice of Federal Tax Lien refiling for the 1989 tax period in Harris County, Texas. *Id.* These two liens were released on June 22, 2008, but a revocation of the certificate of release was filed on July 24, 2008. *Id.* Additionally, on July 24, 2008, the USA filed another notice of federal tax lien in the property records of Harris County, Texas for the income tax years of 1988, 1989, and 1990, but it filed the lien as a nominee lien against the Trust as nominee, transferee and/or alter ego of Craig A. Washington, Sr. *Id.*

On July 9, 2004, Dorothy M.L. Washington recorded Warranty Deeds dated June 23, 2004, in which she conveyed the two Caroline Street properties and the McIlhenny property to Washington—as trustee of the Trust. Dkt. 31. Washington, in turn, conveyed the Calumet Drive property to Dorothy M.L. Washington.

Washington continues to maintain a law practice in the 2323 Caroline office building despite Dorothy M.L. Washington's conveyance of the property to the Trust in 2004. Washington claims that he pays the Trust $15,000.00 per month rent and that he has paid over $302,000.00 in rent since July 2004. Dkt. 31. Additionally, Washington contends that the Trust has paid over $350,000.00 in property taxes, and that it would not have been able to pay these taxes without income from Washington—the largest tenant at 2323 Caroline. *Id.* Washington also contends that the Trust has paid, through its own bank account, the cost of maintenance, electricity, water, and other expenses associated with ownership of 2323 Caroline. *Id.* Thus, according to Washington, the Trust is the proper owner of the property and the USA may not foreclose upon it to collect a tax debt allegedly owed by Washington.

## II. Legal Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id .* "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66

F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

The USA contends that summary judgment should be granted in its favor because (1) Washington failed to pay tax assessments for 1988 through 1990; (2) the assessments are presumptively correct; (3) Washington is the true owner of the properties, notwithstanding that the

properties were conveyed to the Trust; (4) the USA filed a Notice of Federal Tax Lien in the property records of Harris County, Texas; and (5) the USA should thus be allowed to foreclose on the properties to satisfy Washington's tax debt.  Dkt. 20-2.

Washington argues, in response to the USA's motion, that the statute of limitations bars the USA's claims.  Dkt. 25-1.  Washington also contends that the debts were either discharged in his bankruptcy or that the USA should be barred from asserting a claim for the debts now under the doctrine of laches, as the claim should have been asserted during the bankruptcy proceedings.  *Id.* Additionally, Washington argues that the properties cannot be foreclosed upon to satisfy the debt from the 1990 taxes because he did not own the properties when the taxes for 1990 were assessed. *Id.*  Washington's final contention is that the properties are currently owned by the Trust, to which they were properly conveyed by his ex-wife, so the USA may not foreclose upon the properties to satisfy Washington's debts.  *Id.*

In addition to his opposition to the USA's motion for summary judgment, Washington filed a cross motion for summary judgment.  Dkt. 31.  He reasserts the arguments he made in his response to the USA's motion, and he additionally claims that he fully paid his tax liability and that the tax liability is erroneously calculated.  *Id.*  He therefore contends that it is he, and not the USA, that is entitled to summary judgment.

## A.     Statute of Limitations: Internal Revenue Code Section 6502

Washington contends that the USA cannot now assert claims under Internal Revenue Code section 6502 because it did not begin the proceeding within ten years of the assessment of the tax. Dkt. 25.  The USA argues that the statute of limitations was extended under Internal Revenue Code section 6503 during Washington's bankruptcy and during the pendency of an Offer in Compromise

submitted to the Internal Revenue Service by Washington on August 7, 2000.   Dkt. 20-2. Washington claims, however, that he never submitted an Offer in Compromise.  Dkt. 31.

Under section 6502(a)(1), "a tax may be collected by levy or by a proceeding in court" only if "the levy is made or the proceeding begun . . . within 10 years after the assessment."  26 U.S.C. § 6502(a)(1).   The USA assessed Washington's taxes for the 1988, 1989, and 1990 tax years on January 8, 1990, November 19, 1990, and September 16, 1996, respectively. Dkt. 20-2, app. 1.  The USA did not file this claim until December 15, 2009, which is substantially more than ten years after the assessments.

However, under section 6503(h), the "running of the period of limitations provided in section . . . 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and . . . for collection, 6 months thereafter." 26 U.S.C. § 6503(h).  Washington filed for Chapter 11 bankruptcy on January 11, 1991, and his case was not dismissed until February 28, 2000. Dkt. 20-2, app. 2.  Since the taxes for 1988 and 1989 were already assessed on the date Washington filed for bankruptcy, the statute of limitations for those tax years was tolled for the entire time that the bankruptcy was pending, plus six months.  Since the 1990 taxes were not assessed until September 16, 1996, the statute of limitations for that tax year was only tolled from September 16, 1996 through February 28, 2000, plus six months.  There were 3335 days between January 11, 1991 and February 28, 2000.  There were 1260 days between September 16, 1996 through February 28, 2000.  There are approximately 182 days in six months.  So, the court must add 3335 days plus 182 days to the normal date on which limitations would have run for the 1988 and 1989 tax years: January 8, 2000, and November 19,

2000 respectively; and it must add 1260 days plus 182 days to the normal date on which limitations would have run for the 1990 tax year: September 16, 2006.  The new date on which the statute of limitations would have run for the 1988 tax year, based on these calculations, if the bankruptcy were the only event that suspended the limitations period, is August 25, 2009; the new date for the 1989 tax year is July 7, 2010; and the new date for the 1990 tax year is August 28, 2010.[2]  The filing date of this action, December 15, 2009, is beyond the limitations period for the 1988 tax year.  However, this action was filed within the limitations period for the 1989 and 1990 tax years.

According to the USA, however, the 1988 assessment is not barred by the statute of limitations because the bankruptcy is not the only event that tacked time onto the limitations periods. The USA claims that Washington submitted an Offer in Compromise Form 656 on August 7, 2000 in an effort to compromise the 1988-1990 tax assessments and that the USA rejected this offer on January 24, 2001.  Dkt. 20-2.  According to the USA, Form 656 provides that the statute of limitations for collection is suspended while the Offer in Compromise is pending.  The alleged Offer in Compromise was pending for 170 days, which suspended the collection statute of limitation an additional 170 days for each tax assessment at issue.  Dkt. 20-2.  If the limitation periods were indeed tolled while the alleged Offer in Compromise was pending, then adding an additional 170 days would bring the 1988 assessment within the limitations period for collection on the date that the USA filed this lawsuit.

As evidence that Washington submitted an Offer in Compromise, the USA presents an affidavit from James Ashton, an employee of the Internal Revenue Service ("IRS"), in which Ashton

---

[2] The USA's calculations are slightly more conservative than the court's calculations, which is likely due to intervening leap years.  The USA determined that 3515 days should be added to the 1988 and 1990 limitations dates and that 1440 days should be added to the 1990 limitations date.

states that the IRS's electronic files indicate that Washington filed an Offer in Compromise Form

656 on August 7, 2000, and that the IRS rejected the offer on January 24, 2001.  Dkt. 20-2, Exh. 13.

Ashton attached a printout of the electronic file to his affidavit.  Dtk. 20-2, Exh. 13.  This evidence,

however, is not determinative as to the waiver of limitations because, while the *motion* states that

Form 656 waives the statute of limitations while the offer is pending (*see* Dkt. 20-2), Ashton did not

testify as to the contents of the form, and the form was not submitted as evidence (*see* Dkt. 20, Exh.

13).  Thus, there is no actual evidence before the court that Washington's submission of the form

constitutes a waiver of limitations while the IRS considered the offer.

Washington contends in his response that he did *not* file an Offer in Compromise.  Dkts. 25-

1; 31.  He does not, however, point to any evidence in the record, in the form of an affidavit or

otherwise, to support this contention.  The court cannot rely on unsupported conclusory allegations

when granting summary judgment.  *See* Fed. R. Civ. P. 56(c).  Thus, neither the USA nor

Washington has offered sufficient evidence to support their conflicting assertions regarding the

existence or lack thereof of an Offer in Compromise.  Summary judgment on the statute-of-

limitations issue is therefore inappropriate at this point.  Thus, Washington's motion for summary

judgment on the statute of limitations issue under section 6502 is DENIED.

**B.  Timeliness of Tax Assessment: Internal Revenue Code Section 6501**

Washington contends that the assessment for the 1990 taxes, which was not assessed until

September 13, 1996, was untimely.  Dkts. 25-1, 31.  Under section 6501(a) of the Internal Revenue

Code, taxes must be assessed within three years after a tax return is filed.  26 U.S.C. § 6501(a).  The

USA claims that the stay entered in Washington's bankruptcy prevented it from assessing the taxes

until 1996, and that it was only able to assess the taxes in 1996 due to the implementation of the

Bankruptcy Reform Act.  Dkt. 30.  Washington contends that, even if the USA could not make a

formal assessment until after the enactment of the Bankruptcy Reform Act, it could have notified

him about the deficiency.  Washington argues that if he had received such notification, he would

have requested that the bankruptcy court refer his matter to tax court for a determination of liability.

Dkt 31.

Washington relies on *In re Hardy*, 39 B.R. 64, 66 (Bankr. E.D. Pa. 1984), to support his

argument relating to notification of the deficiency.  In *Hardy*, the Bankruptcy Court in the Eastern

District of Pennsylvania considered whether the IRS should be held in contempt for sending to

debtors various precursors to a notice of tax deficiency, as well as a notice of tax deficiency, which

the debtors contended violated the automatic bankruptcy stay.  39 B.R. at 65.  The court held that

sending the forms prior to the actual notice of tax deficiency did not constitute a violation of the

automatic stay and that sending the notice of tax deficiency did not provide a sufficient basis for

contempt, as there was a question as to whether the IRS knew about the stay before sending the

notice.  *Id.* at 66.

*Hardy* does not impose a duty on the IRS to send a debtor an informal notice of deficiency

even though it is unable, under the automatic stay, to formally assess the debt.  It simply holds that

if the IRS *does* send an informal notice, then it is not in violation of the automatic stay.  The statute

in effect at the time allowed the IRS to "issue the Debtor a Notice of Tax Deficiency, and *a fortiori*,

engage in inquiries related to the calculation of such liability, . . . [but] it was prohibited from formal

assessment of tax liability and the creation of liens."  *In re Carlson*, 189 B.R. 454, 458-59 (Bankr.

N.D. Ill. 1995), *aff'd Carlson v. I.R.S.*, 198 BR. 949 (N.D. Ill. 1996), *aff'd In re Carlson*, 126 F.3d

915 (7th Cir. 1997) (discussing the previous version of 11 U.S.C. § 362(b)(9)).  It is nonsensical to

claim that the assessment was untimely under section 6501 because it was not informally assessed within three years after the return was filed when the stay prohibited formal assessment. Accordingly, the court finds that the assessment of Washington's 1990 tax debt in 1996 was not untimely. Washington's motion for summary judgment relating to the alleged untimely assessment of the 1990 taxes is DENIED.

**C.  Ownership of Property: 1990 Assessment**

Washington also points out that by the time the USA assessed the 1990 taxes in 1996, he no longer owned the properties at issue. Dkt. 31. Washington conveyed these properties to Dorothy M.L. Washington in 1993. *Id.* In 1996, when the USA assessed the 1990 taxes, Mrs. Washington owned the properties, not Mr. Washington. *Id.* Washington argues that the tax lien could not attach to properties not owned by Washington at the time the line was imposed. *Id.*

Under section 6321 of the Internal Revenue Code, if a "person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and right to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Under section 6322, "the lien imposed by section 6321 shall arise at the time the assessment is made . . . ." *Id.* § 6322. Here, the assessment was made in 1996, and the record indicates that Washington conveyed the properties at issue to Dorothy M.L. Washington in exchange for the Calumet property as part of their divorce settlement in 1993. Thus, at the time the lien arose, Washington did not own the properties. Accordingly, Washington's motion for summary judgment is GRANTED insofar as his request for a finding that he did not own the properties when the lien for the 1990 taxes was imposed.

11

**D.  Amount Due and Owing:**

Washington claims that the USA is not entitled to summary judgment because the Certificate of Assessments, Payments and Other Specified Matters (Form 4340) are currently in dispute and there are questions of material fact regarding the amount due and owing.  Dkt. 25-1.  Specifically, he claims that he has either fully paid the debt or that it is erroneously calculated.  Dkt. 31. Moreover, he denies receiving notice of the 1999 Notice of Federal Lien, indicates that he believes the amounts due to the IRS were resolved during his bankruptcy, and points out that the United States itself released the 1999 and 2000 liens in 2008 based on the running of the statute of limitations.  Dkt. 25-1.  He therefore claims that the amounts sought may be "uncollectible" and that summary judgment in the United States' favor is therefore inappropriate.  *Id.*

**1.      Was the Amount Fully Paid or Erroneously Calculated?**

Washington conclusorily claims that he has either fully paid his taxes or that they were erroneously calculated.  Dkt. 31.  However, there is a presumption that the IRS Form 4340s are correct.  *See United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1989);  *see also Perez*, 312 F.3d at 195 (determining that a delinquent taxpayer's "unsubstantiated, self-serving allegations that he did not receive notice of his assessed federal tax liabilities" did not create an issue of material fact). Washington has not shown that the amount due is invalid.  Washington cannot effectively rebut the presumption in favor of validity with conclusory allegations.  *See BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996).

**2.      Did Washington Receive Proper Notice?**

Washington next contends that, while he was aware that "something had been filed with the clerk," he never received notice of the 1999 lien.  *Id.*  The Form 4340s presented by the United

12

States, however, show that Washington received numerous notices regarding the outstanding tax liabilities. Dkt. 20-2, Exh. 1; Dkt. 30. The USA does not have to prove that Washington received the notices, it just has to show that it mailed appropriate notices to Washington's last mailing address. *McCarty v. United States*, 929 F.2d 1085, 1089 (5th Cir. 1991). It has made this showing. *See, e.g.*, *Perez v. United States*, 312 F.3d 191, 195-96 (5th Cir. 2002) (finding that IRS forms were "solid evidence" of proper assessment and notice).

### 3.   Was the Amount Due and Owing Discharged During Washington's Bankrutpcy?

Washington contends that there is an issue of material fact with regard to the amount due and owing, as he believes that the income tax liabilities for 1988, 1989, and 1990 were resolved during his bankruptcy proceedings. Dk. 25-1. The USA asserts that it "does not have a duty to marshal assets in a bankruptcy" and that it "is the debtor's duty to propose a feasible plan to pay his creditors and to ensure that the play [sic] payments are made." Dkt. 30. Washington does not present any evidence that the amounts due were resolved during the bankruptcy, and he cannot create a question of material fact by making conclusory allegations that they were. *See Wilson Indus., Inc. V. Aviva Am. Inc.*, 185 F.3d 492, 494 (5th Cir. 1999) ("The non-movant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").

### 4.   Does the USA's Release of the Liens Impact the Analysis?

Washington also asserts that the USA's release of the November 29, 1999 and November 6, 2000 liens on June 22, 2008 based on the running of the statute of limitations creates an issue of material fact, though he is less than clear as to how this impacts the analysis. Dkt. 25-1. The USA admits that it erroneously released the liens on June 22, 2008. Dkt. 20-2. However, it filed a Revocation of Certificate of Release of Federal Tax Lien on July 24, 2008, and it recorded a new

13

Notice of Federal Tax Lien on July 24, 2008.  *Id.* & Exh. 13, Exh. B.  The revocation document declares "that the certificate of release . . . is revoked, and the lien is reinstated as provided under the Internal Revenue Code Section 6325(f)(2)."  *Id.*, Exh. 13, Exh. B.  Under section 6325(f)(2), the government may revoke a certificate of release or nonattachment if it determines that it was issued erroneously or improvidently.  26 U.S.C. § 6325(f)(2).  The reinstated lien "shall be effective on the date notice of revocation is mailed to the taxpayer," if it is mailed, "but not earlier than the date on which any required filing of revocation is filed," if it was filed rather than mailed.  *Id.*  Thus, it appears that the only impact the revocation has on the analysis relates to the date upon which the lien was effective.  Neither Washington nor the USA provide briefing about this issue, so the court will not address the impact of an effectiveness date of July 24, 2008, which is after the conveyance of the properties to Dorothy M.L. Washington pursuant to the divorce settlement *and* the subsequent conveyance of the properties by Dorothy M.L. Washington to the Trust.  However, the court strongly encourages the parties to address this issue in their joint pretrial order.

## E.    Laches

Washington states that the IRS was a party to his bankruptcy and argues that it should have asserted a claim as a priority creditor.  Washington claims that the IRS's failure to assert its claim during his bankruptcy prohibits it from now asserting a claim, as it is barred from doing so under the doctrine of laches.  Dkt. 21.  The USA claims that it was Washington's duty to propose a feasible plan to pay his creditors and to ensure payments were made, and that it had no obligation to demand payment during the bankruptcy.  Dkt. 30.

Laches "may not be asserted against the United States when it is acting in its sovereign capacity to enforce a public right or protect the public interest."  *United States v. Popovich*, 820 F.2d 134, 136 (5th Cir.).  "The timeliness of government claims is governed by the statute of limitations

enacted by Congress." *Matter of Fein*, 22 F.3d 631, 634 (5th Cir. 1994). Washington, thus, cannot

assert laches in this case, and his motion for summary judgment as it relates to the doctrine of laches

is DENIED.

## G.   Revocable Trust: What Happens if a Trust Document Is Destroyed?

The USA claims that the trusts are deemed revocable because Washington cannot produce

a writing evidencing that they are irrevocable. Washington contends that the trusts *were* evidenced

by a writing but that the writing was later destroyed. He further claims that he has sufficient

evidence to show that the trusts are irrevocable. If the trusts are, as the USA claims, revocable, then

Washington "cannot shield his assets by placing them in revocable trust[s] for his own benefit."

*United States v. Estabrook*, 78 F. Supp. 2d 558, 560-61 (N.D. Tex. 1999) (citing *Matter of Brooks*,

844 F.2d 258, 261 (5th Cir. 1988)). If the trusts, however, are irrevocable and valid, then

Washington has a valid argument that the USA cannot reach the property of the trusts to satisfy

Washington's personal tax debt.

Under Texas law, a person seeking to enforce a purported trust in real property must present

"written evidence of the trust's terms bearing the signature of the settlor or the settlor's authorized

agent." Tex. Prop. Code Ann. § 112.004 (Vernon 2007). Additionally, "a settlor may revoke the

trust unless it is irrevocable by the express terms of the instrument creating it or of an instrument

modifying it." *Id.* § 112.051(a). Irrevocability cannot be inferred or implied. *McCauley v. Simmer*,

336 S.W.2d 872, 881 (Tex. Civ. App.—Houston 1960, writ dism'd). The USA argues that if the

instrument creating the trust is not available, the trust is presumed revocable.

The USA cites three cases, *Ayers v. Mitchell*, *Citizens National Bank of Breckenridge v.*

*Allen*, and *McCauley v. Simmer*, to support its view that the Trust must be presumed revocable since

there is no available trust document stating that the Trust is irrevocable. In *Ayers v. Mitchell*, the

Texas Court of Appeals in Texarkana held that an alleged trust was revocable, as a matter of law, because "there was no written document establishing the trust and stating its purposes, duration, or whether it was revocable." 167 S.W.3d 924, 930 (Tex. App.—Texarkana 2005, no writ). The alleged trust in *Ayers* was an oral trust. *Id.* In *McCauley*, the Texas Court of Civil Appeals in Houston noted that "irrevocability of the trust must be shown by the terms and language of the instrument creating the trust or by a supplement or amendment thereto, and not by inference or implication." 336 S.W.3d at 881. However, the court held that the trust at issue, which used the work "irrevocably" in its granting clause, met the requirements of the statute. *Id.* In *Citizens National Bank*, the Texas Court of Appeals in Eastland noted that the statute requiring that trusts can only be made irrevocable by the terms of the instrument implies "a power of revocation in every trust unless provided otherwise." 575 S.W.2d 654, 657 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.). None of these cases addresses the situation where the settlor claims that the original trust, which was written, contained language making it irrevocable, but the original document has been lost or destroyed.

Pursuant to Texas Rule of Evidence 1004, other evidence can be admitted to show the contents of a writing if the original is lost or destroyed. Tex. R. Evid. 1004; *see In re Estate of Berger*, 174 S.W.3d 845, 847 (Tex. App.—Waco 2005, no pet.). For instance, in *Berger*, the Waco Court of Appeals held that there was "more than a scintilla of evidence that [a] trust agreement was lost" when the party asserting its existence filed an affidavit discussing when she originally saw the document, what the first page of the document said, and when and where she last saw the document. *Id.* at 848. The details of this affidavit were sufficient to "raise[] a genuine issue of material fact on the question of whether [the affiant was] the beneficiary of the purported trust agreement . . . ." *Id.*

16

Under this precedent, Washington's affidavit and the evidence attached thereto is sufficient to raise an issue of material fact as to whether the Trust is an irrevocable trust. The affidavit must raise a material fact with regard to whether Washington can "show the existence of the intended trust property, object, and beneficiary with reasonable certainty." *Id.* Washington's affidavit states that he created the trusts using a form book found in his law office. Dkt. 27, Exh. 6. Washington claims that his secretary at the time recalls that she prepared the templates for the trusts, after several draft versions, and she recalls Washington dictating the contents of the templates from a form book. *Id.* Washington attached copies of the portions of the form book that he claims he used to create the trusts to his affidavit, noting that he still has the 1985 cumulative pocket part for the book. *Id.*; Dkt. 29, Exh. 11 (form book). He states that he funded each trust with $10.00 from his personal funds, and that each trust was irrevocable. Dkt. 27, Exh. 6. He also specifically lists the beneficiaries of the Trust, and notes that the three properties at issue were deeded to the Trust in July 2004. *Id.* As to whether the trusts are irrevocable, Washington claims that he consulted with an attorney in 1989 and 1990 who specifically recalls giving him advice about establishing the trusts, which the attorney advised should be irrevocable. *Id.* The portion of the form book Washington attached to his affidavit also advises about creating irrevocable trusts. Dkt. 29, Exh. 11 at 575.

Washington additionally provides substantial information about the alleged loss of the trust documents. He claims that he had three storage units in which he stored older files and computers, and that the storage units flooded during a tropical depression in 2001. Dkt. 27, Exh. 6. He submits photographs of the damage sustained in these storage units. Dkt. 29, Exh. 10. He claims that the pages in the files were destroyed, as they were all stuck together and covered with mold. Dkt. 27, Exh. 6. He notes that he did not realize that the trust documents were in the destroyed files until he

17

attempted to obtain a loan for one of the other trusts in December 2008.  *Id.*  He needed a copy of the original trust document, and when he could not find it, he realized that the documents must have been destroyed in the files.  *Id.*  He looked through his current computer files, but the documents were likely created on the old computers that were destroyed during the flood.  *Id.*

The court finds that this evidence is sufficient for a reasonable fact-finder to determine that Washington created the Trust in 1989 or 1990 using $10 from his personal funds, that the beneficiaries were his and three of his brother's children, that the Trust was created from a form book and is irrevocable, and that the three properties at issue were deeded to the Trust in 2004.

## G.  Alter Ego/Nominee Ownership

The USA contends that, notwithstanding Washington's conveyance of the properties to Mrs. Washington and her transfer of the properties to the Trust, that Washington is the true owner of the properties because the Trust is the alter ego or nominee of Washington.  The "concepts of 'nominee,' 'transferee,' and 'alter ego' are independent bases for attaching the property of a third party in satisfaction of a delinquent taxpayer's liability.  'A nominee theory involves the determination of the true beneficial ownership of property.  An alter ego theory focuses more on those facts associated with a "piercing the corporate veil" analysis.'"  *Oxford Capital Corp. V. United States*, 211 F.3d 280, 284 (5th Cir. 2000) (quoting William D. Elliot, Federal Tax Collections, Liens and Levies ¶ 9.10[2] (2d ed. 2000)).  "Specific property in which a third person has legal title may be levied upon as a nominee of the taxpayer if the taxpayer in fact has beneficial ownership of the property."  *Id.*  The court must consider the following factors when determining nominee status:

(a) No consideration or inadequate consideration paid by the nominee;
(b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;
(c) Close relationship between transferor and the nominee;
(d) Failure to record conveyance;
(e) Retention of possession by the transferor; and
(f) Continued enjoyment by the transferor of benefits of the transferred property.

*Id.* at 284 n.1 (quoting *Tow Antique Ford Found. V. Internal Revenue Serv.*, 791 F. Supp. 1450, 1454

(D. Mont. 1992), *aff'd w/o opinion*, 999 F.2d 1387 (9th Cir. 1993)).

### 1.    Consideration

The USA contends that the Trust is a sham and that it was merely the nominee of Washington, as there was no consideration paid *by the Trust* for the properties at issue.  Dkt. 20-2. Dorothy M.L. Washington, in fact, transferred the properties to the Trust after *Washington* transferred the Calumet property to her.  Washington contends that the properties at issue were a *gift* to the Trust, and no consideration was therefore needed.[3]  Dkt. 25-1 at 22.  Later in his response, Washington notes that Dorothy M.L. Washington transferred the properties to the Trust for "$10.00 and valuable consideration."  *Id.* at 28.  Washington submits copies of the Warranty Deeds containing this language.  *Id.* Exh. 4.  Thus, it appears, despite Washington's conclusory contention that the transfer was a gift, that at least some consideration was paid by the Trust for the property. However, there is a question of fact with regard to whether the consideration was of a sufficient amount to weigh in Washington's favor under this factor.

---

[3] The USA points out that only two of Dorothy M.L. Washington's children are beneficiaries of the Trust, making the contention that she simply gave the properties to the Trust as a gift unlikely.  Dkt. 30.  Moreover, the USA claims that Dorothy M.L. Washington did not file a Form 709 reporting the transfer as a gift.  *Id.*

### 2.    Anticipation of Suit

The USA contends that Washington was well aware that there were outstanding tax liabilities when the transfer of the properties to the Trust took place in 2004, and it presents evidence that Washington received numerous notices of the balance due and intent to levy throughout the years. Dkts. 20-2, 30.  Washington states that he does not "argue the point that this took place in June 2004," but "to suggest something nefarious was afloat during this transaction is simply speculation at best on the part of Plaintiff."  Dkt. 25-1.  He states that there is no evidence before the court that he directed Dorothy M.L. Washington to transfer the property to the Trust rather than directly to him. *Id.*  Additionally, he points out that, during his deposition, he testified that he did not know that federal taxes were due and owing.  *Id.*  Washington testified that it was his understanding that the tax debts were "paid through the bankruptcy because a good deal of the property that [Washington's] then wife and [Washington] owned was sold for the purpose of paying off IRS indebtedness."  Dkt. 27, Exh. 1 at 20-21.  The court finds that there is a question of fact with regard to whether the transfer was in anticipation of suit.

### 3.    Close Relationship Between Transferor and Nominee

The USA contends that Washington, who it contends is the transferor, and the Trust share a close relationship because Washington is the trustee of the Trust. Dkt. 20-2.  Washington points out that he was not the transferor of the properties at issue here, Dorothy M.L. Washington was.  Dkt. 25-1.  The court agrees that Washington was not the transferor of the properties at issue, and there is no evidence before the court regarding the current relationship between Dorothy M.L. Washington, Washington, and the Trust, other than that two of Dorothy M.L. Washington's children and five of

Washington's children are beneficiaries of the Trust.  This issue is therefore not appropriate for summary judgment.

### 4.      Failure to Record Conveyance

The USA notes that the 2004 deed was recorded in the Harris County real property records, but it contends that the transfer to the Trust was never reported on any gift tax returns, that the Trust has never filed a tax return, and that the Trust income has not been reported on Washington's tax returns. Dkt. 20-2.  Washington does not dispute these points. Dkt. 25-1.  However, he states that it would have been improper for him to report the Trust's income on his personal taxes and that, while he may have been negligent as a trustee for failing to file a tax return on the Trust's behalf, that is an issue for the Trust to raise, not the USA.  *Id.*  The court finds Dorothy M.L. Washington recorded the transfer by deed, so the transfer was sufficiently recorded to satisfy this factor.

### 5.      Retained Possession and Continued Enjoyment

The USA claims that Washington uses the Trust property for his own personal benefit.  Dkt. 20-2.  Specifically, the USA claims that Washington uses the office and parking lot for his law office without paying adequate rent to the Trust.  Dkt. 20-2.  Washington contends that he has paid $15,000.00 per month rent for years and that he has paid over $302,000.00 in rent between July 2004 through the present date.  Dkt. 25-1.  The USA points out that if Washington had paid $15,000.00 per month rent, his annual rent would be approximately $180,000.00, and that his total rent from July 2004 through the present would be approximately $1,215,000.00.  Dkt. 30.  The court agrees that it appears that Washington continues to possess and enjoy the property and that these factors appear to weigh in favor of the USA.  However, the fact that Washington pays some rent for his use and enjoyment of the property creates a question of material fact best left for trial.

The court notes that a "delinquent taxpayer who has never held legal title to a piece of property but who transfers money [or in this case other property] to a third party and directs the third party to purchase property and place legal title in the third party's name may well enjoy the same benefits of ownership of the property as a taxpayer who has held legal title," so the "actual transfer of legal title is not essential to the imposition of a nominee lien." *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007). However, here there is not sufficient evidence before the court that Washington actually "directed" Dorothy M.L. Washington to transfer the property to the Trust

The USA did not delve into the specifics of its alter ego contention in its briefing, and the court finds it unnecessary to do so here since there are obvious issues for trial on the nominee theory. Accordingly, the USA's motion for summary judgement on the grounds that the Trust is the alter ego or nominee of Washington is DENIED.

**H.  Fraudulent Transfer**

The USA contends that Washington directed Dorothy M.L. Washington to transfer the properties to the Trust rather than directly to him in order to "hinder, delay, or defraud the United States of taxes due" and thus violated Texas Business and Commerce Code § 24.005(a)(1). Dkt. 20-2 (citing the 1987 version of the statute). The USA additionally contends that the transfers of property were fraudulent under Texas Business and Commerce Code § 24.006(a). The court will analyze each statute in turn.

**1.      Section 24.005**

Under section 24.005,

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the

22

> obligation . . . with actual intent to hinder, delay, or defraud any
> creditor of the debtor . . . .

Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (Vernon 2009).  The following factors must be

considered to determine if there was "actual intent":

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property
> transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the
> debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all of the debtors' assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was
> reasonably equivalent to the value of the asset transferred or the
> amount of obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the
> transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial
> debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a
> lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com. Code § 24.005(b).  The USA contends that actual intent can be established under

these factors because (1) the transfer was to an "insider" because Dorothy M.L. Washington

transferred the properties to a Trust created by Washington for his children's benefit, and he is the

trustee of the Trust; (2) Washington retained possession of the property, and, as trustee, he retained

control of the property; (3) the transfers were concealed because they were never reported on income

tax returns or gift tax returns; (4) Washington was "well aware of his outstanding tax liabilities"; and

(5) Washington was insolvent or became insolvent shortly after the transfer to the Trust, as a debtor

who is not paying his debts is presumed insolvent.  Dkt. 20-2.

Washington, citing *Flores v. Robinson Roofing & Construction Co., Inc.,* argues that if fraudulent intent is to be deduced from the badges of fraud listed in section 24.005(b), the badges of fraud must be submitted to the trier of fact.  In *Flores*, the Texas Court of Appeals in Fort Worth held that the trial court improperly dismissed fraudulent transfer claim on a no-evidence motion for summary judgment because the plaintiff had "produced more than a scintilla of probative evidence to raise an issue of material fact on the issue of intent."  161 S.W.3d 750, 756 (Tex. App.—Fort Worth 2005, pet. denied).  The court noted that the "question of whether a debtor conveyed property with the intent to defraud creditors is 'ordinarily a question for the jury or the court passing on the fact.'"  *Id.* (quoting *Coleman Cattle Co. v. Carpenter*, 10 S.W.3d 430, 433-34 (Tex. App.—Beaumont 2000, no pet.)).

Additionally, Washington claims that there are questions of material fact with regard to the badges of fraud that the USA asserts weigh in favor of fraudulent intent.  Washington claims that he paid a substantial amount of rent for his use of the property and that the control he exercised as trustee was not improper, so fraudulent intent should not be inferred from his use of the property.  Dkt. 25-1.  Washington contends that the transfers were *not* concealed because the Warranty Deeds transferring the property to Washington as trustee of the Trust were recorded in Harris County records.  Dkt. 25-1, Exh. 4.  Washington additionally contends that he was not "well aware" of these liabilities because he believed that the debts had been discharged during his bankruptcy.  Dkt. 25-1. Finally, Washington claims that there is no evidence that he was insolvent or became insolvent shortly after the transfer to the Trust.  Dkt. 25-2.

Washington notes that under the Texas Business and Commerce Code, a debtor is insolvent if the sum of his debts is greater than all of the debtor's assets at a fair valuation, and he contends

that there is no evidence before the court relating to his assets or liabilities at the time of the transfer of the properties in question. *Id.* (citing Tex. Bus. & Com. Code § 24.003(a)). The USA points out that Texas Business and Commerce Code section 24.003(b) indicates that a debtor who is not paying his debts is presumed to be insolvent, and that it is clear here, given the tax debt, that Washington was not paying his debts. Dkt. 35. The court finds that there is a question of fact as to whether this presumption applies, though, because it cannot ascertain whether Washington knew that he owed the debt through written motions. If Washington truly believed, as he claims, that the debt was paid during the bankruptcy, then the debt alone is not enough to trigger the presumption in favor of insolvency.

The court agrees with Washington that the badges of fraud are, in this case, best left to the trier of fact. Accordingly, the USA's motion for summary judgment as it relates to fraudulent transfer under Tex. Bus. & Com. Code Ann. § 24.005(a)(1) is DENIED.

### 2.    Section 24.006

Under section 24.006(a) of the Texas Business and Commerce Code,

> A transfer made or obligation incurred by a debtor is fraudulent to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Tex. Bus. & Com. Code Ann. § 24.006(a) (Vernon 2009). The USA contends that Washington was "well aware he had outstanding income tax liabilities when the transfer to the Trust was made in 2004." Dkt. 20-2. The USA states that Washington cannot provide any evidence demonstrating that he received consideration for the transfer of the properties to the Trust, and notes that Washington

is presumed insolvent because he was unable to pay his outstanding income tax liabilities.  *Id.*

Washington reasserts his claim that there is no evidence that he was insolvent or that was "well aware" of his tax liabilities, and he claims that consideration was provided when the properties were transferred to the Trust in 2004, as is reflected on the Warranty Deed transferring the properties. The Warranty Deeds state that Dorothy M.L. Washington, "in consideration for the sum of **TEN AND NO/100 DOLLARS** and other valuable consideration to the undersigned paid by the grantee herein named . . . have **GRANTED, SOLD AND CONVEYED** . . . unto **CRAIG A. WASHINGTON** as Trustee of the Washington Children's Trust Number 1 . . .all of my interest in [the properties at issue]."  Dkt.  27, Exh. 4.  Washington claims there is no evidence in the record as to the value of the properties transferred in 2004, so there is a question of material fact with regard to whether Dorothy M.L. Washington received consideration of a "reasonably equivalent value." Dkt. 25-1.

Contrary to Washington's assertion, there is evidence in the record relating to the value of the properties conveyed, as Washington himself claims to be paying the Trust thousands of dollars a month in rent.  Additionally, the USA provides documentation from the Harris County Appraisal District for the 2005 tax year that shows that the property at 2323 Caroline was valued at $322,694 and the lot at 2317 Caroline was valued at $137,500.  Dkt. 35, Exh. B.  Thus, if the property was transferred to the Trust for only $10.00, then the consideration was not of a "reasonably equivalent value."  However, the deeds also state, "and other valuable consideration."  There is no evidence before the court relating to this "other valuable consideration," so the court is unable to determine if it was of a reasonably equivalent value.

26

Because there are unresolved questions of fact remain with regard to the elements of section 24.006(a), summary judgment is inappropriate.  The USA's motion for summary judgment as it relates to an alleged fraudulent transfer under Texas Business and Commerce Code section 25.006(a) is therefore DENIED.

### I.        Sham Trust

The USA also contends that the Trust is a sham and that the property should therefore be considered Washington's property for tax collection purposes.  Dkt. 20-2.  Courts consider the following factors to determine whether a trust is a sham: "1) whether the grantors themselves serve as trustees with powers so broad as to effectively allow them to allocate the entirety of the trust's assets and/or income to themselves; 2) whether the taxpayers have retained full use of the assets placed in trust; 3) whether the trust's assets have been used to pay personal expenses of the taxpayers; and 4) whether trust's assets have been distributed to the putative beneficiaries of the trust." *United States v. McMahan*, No. V-08-07, 2008 WL 5114651, at *5 (S.D. Tex. Dec. 3, 2008) (Rainey, J.) (determining that the factors weighed in favor of a finding that the family trust at issue was a sham trust).  The USA argues that these factors weigh in favor of a finding that the Trust is a sham, as Washington uses the Trust property for his own personal benefit without paying adequate rent, and he has complete control over the Trust property.  Dkt. 20-2.  Specifically, it points out that Washington has not, as he claims, paid $15,000 a month in rent, as he also claims that he has paid "over $302,000" in rent, which is significantly less than he would have paid had he actually been paying $15,000 per month in rent.  Dkt. 30.  The USA notes that "there is no separation of income and expenses of the trusts that Mr. Washington created," as there is only one bank account for the alleged multiple trusts created.  *Id.*  Thus, Washington himself does not treat the trusts as viable

separate entities.  *Id.*  Moreover, he does not have any trust documents and has not even filed income tax returns for any of the trusts.  *Id.*

Washington contends that Dorothy M.L. Washington is the grantor of the property, not him. Dkt. 31.  He admits that he uses the property, but claims that he pays a significant amount of rent. *Id.*  He argues that the Trust has not been used to pay Washington's personal obligations and that distributions have, indeed, been paid to the Trust beneficiaries.  Dkt. 31 (citing Exh. 8 (cancelled checks to beneficiaries of the Trust)).

The court finds that Washington has presented sufficient evidence to create a question of material fact as to whether the Trust is a sham.  Summary judgment therefore is not warranted.  The USA's motion for summary judgment on the grounds that the Trust is a sham is therefore DENIED.

## IV. Conclusion

Washington's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  It is GRANTED on the grounds that the property upon which the USA contends there is a lien for the 1990 taxes did not belong to Washington at the time the assessment was made, so it may not foreclose on the property to satisfy the 1990 taxes.  It is DENIED in all other respects.  The USA's motion for summary judgment is DENIED, as the record abounds with questions of material fact.

Signed at Houston, Texas on June 20, 2011.

_____
Gray H. Miller
United States District Judge